UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
MARDONIO SALAZAR GARZON,
GENARO CARBAJAL

                      Plaintiffs,

          -against-

TAPPAN GOLF PRO SHOP INC.,

                      Defendants.
------------------------------------------------X

**COLLECTIVE ACTION COMPLAINT**

Case No.: _____

PLAINTIFFS DEMAND A TRIAL BY JURY

Plaintiffs, Mardonio Salazar Garzon and Genaro Carbajal, by their attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

## NATURE OF THE CASE

1. Plaintiffs, individually and on behalf of all other similarly situated current and former hourly employees of Defendant, bring this action against Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to compensate the Plaintiffs an overtime premium, failure to pay a minimum wage, and failure to pay wages due and owed for hours employees were required to report to work, ready to perform work and actually performed work duties. Plaintiff seeks to recover unpaid back wages, unpaid tips, unpaid overtime, and an additional amount as liquidated damages, reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617.

3. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

4. Venue is proper in this district based upon Defendant's residency within Bronx County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

5. That at all times relevant hereto, Plaintiff Mardonio Salazar Garzon ("Plaintiff Garzon") is a resident of the State of New York.

6. That at all times relevant hereto, Plaintiff Genaro Carbajal ("Plaintiff Garzon") is a resident of the State of New York.

7. Plaintiff Garzon was, during all relevant times, an employee for Defendant.

8. Plaintiff Carbajal was, during all relevant times, an employee for Defendant.

9. That at all times relevant hereto, Plaintiff Mardonio Salazar Garzon ("Plaintiff Garzon") is a resident of the State of New York.

10. That at all times relevant hereto, Plaintiff Genaro Carbajal ("Plaintiff Garzon") is a resident of the State of New York.

11. Plaintiff Garzon was, during all relevant times, an employee for Defendant.

12. Plaintiff Carbajal was, during all relevant times, an employee for Defendant.

13. That at all times relevant hereto, TAPPAN GOLF PRO SHOP INC. ("Tappan Golf Center") was and is a Domestic Limited Liability Company duly authorized and existing by virtue of the laws of the State of New York.

14. That at all times relevant hereto, Defendant Tappan Golf Center does business in the State of New York.

15. That at all times relevant hereto, Defendant Tappan Golf Center is located at 116 Route 303

16. Tappan, NY 10983.

17. Upon information and belief, Defendant Tappan Golf Center is a joint employer and/or single enterprise with Closter Golf Center which is operated under the same corporate entity

by the same owners and management.

18. Upon information and belief, Defendant Tappan Golf Center has more than $500,000.00 in business done each year and engages in interstate commerce.

19. Defendant Tappan Golf Center is referred to herein as "Defendant."

## MATERIAL FACTS

20. Plaintiff Garzon was hired by Defendant Tappan Golf Center in 1995 as a general laborer. He began working at the New Jersey location, Cluster Golf Club.

21. Throughout Plaintiff Garzon's employment, his work product was excellent and he was never disciplined for his performance.

22. Plaintiff Garzon, at the start of his employment in 1995 was paid $4.25 per hour.

23. Approximately each year Plaintiff received a .25 cent increase in pay.

24. Plaintiff Garzon was required to arrive at work at 6:00 AM and leave at 4:00 PM, six (6) days a week. Plaintiff Garzon's day off was constantly changed at this time.

25. Plaintiff Garzon, at that time, was required to work sixty (60) hours a week and was not paid time and a half for hours worked in excess of forty (40) each week.

26. In or around 2000, Garzon was moved to the New York location Tappan Pro Golf Shop and began work there with the same schedule, same tasks and same pay.

27. In 2018, Plaintiff's hourly pay was raised to $12 after years. He did not receive any additional pay for overtime hours as required by law.

28. At this time, Plaintiff Garzon was required to work sixty (60-80) hours, getting paid $720-$960 in cash each week.

29. Plaintiff Carbajal was hired by Defendant Tappan Golf Center in January of 2011 as a general laborer. He worked there for a total of two years.

30. At the start of Plaintiff Carbajal's employment he was paid $7.00 per hour.

31. In or around January Plaintiff's Carbajal's first few days of work he noticed no overtime was being paid. He questioned the cashier to which he responded rudely "Do you want to work or not?" Carbajal said nothing and continued his shift.

32. Plaintiff Carbajal worked from 7:00 AM to 5:00 PM, six days a week with one off day.

33. Plaintiff Carbajal weekly compensation was around $420 at this time.

34. In or around January 2012, Plaintiff Carbajal got a pay raise of $7.25 an hour. Carbajal's compensation was around $435 at this time, fluctuating with the number of hours he worked.

35. Plaintiff Carbajal was never paid time and a half for hours worked in excess of forty (40) each week.

36. Sunday was payday. The cashier would give the workers their cash for hours worked in an envelope with their names on it. Defendant's cashier would also keep track of the hours they worked and wrote it down on a piece of paper.

37. Plaintiffs also lived on the work site along with another worker.

38. The living conditions were terrible and unsanitary; they were made to live in the maintenance room where a toilet and shower were part of the same single room.

39. In this room they called "home" there were two sets of bunk beds where three grown men were made to sleep. The bathroom was in the same room, they created a small fake wall division to at an attempt for "privacy" when using the restroom.

40. Defendant charged Plaintiffs between $200 and $500 for "rent" which was automatically withheld from their paychecks as an illegal deduction.

41. There was no kitchen so Plaintiffs had to purchase food from Defendant every day.

42. The room is located right next to the cashier where the entry is, accessible to any one if the door was not locked. There was a lounge which included a small kitchen area for customers

which Defendant later permitted Plaintiffs to use.

43. Plaintiffs were required to work all holidays.

44. In or around April 2013, Plaintiff Carbajal was moved to the Jersey location Cluster Golf Club as a general laborer.

45. Plaintiff Carbajal continued there until he was terminated in December of the same year. His current pay was $8.00 per hour.

46. During his last year his weekly compensation was $480.

47. About two years ago there was a lawsuit against the golf range.

48. After the lawsuit the owner started calling him "No. 1" instead of his name and told him to stay away from the driving range.

49. Plaintiffs felt like slaves.

50. Plaintiff Garzon was then told by a cashier he cannot show up to work anymore and he had to move out.

51. Plaintiff Garzon tried many times to get in contact with the owner with no success.

52. Plaintiff Garzon was terminated in 2019 with no explanation.

53. Due to Defendant's failure to pay Plaintiff Garzon and Plaintiff Carbajal the minimum wage to which they are entitled and the overtime premium for hours over forty, they have lost significant income during their employment.

54. Plaintiffs have also been forced to have money withdrawn from their checks on a regular basis as an illegal deduction.

55. Plaintiff Garzon began working for Defendant from 1995 until he was terminated in 2019.

56. Plaintiff Garzon was employed six (6) days a week, thirteen (13) hours each day.

57. At all times, Plaintiff Garzon and Plaintiff Carbajal was paid only a flat hourly rate per week, regardless of hours worked.

58. Plaintiffs were always paid cash and no employer tax contribution was made on their behalf.

59. Defendant failed to provide Plaintiffs with a wage statement or wage notices throughout their employment.

60. All of Defendant's employees were treated in the same manner and not paid overtime instead they received a flat hourly rate pay.

## THE FLSA COLLECTIVE ACTION

61. While class certification pursuant to FRCP Rule 23 is not required for an FLSA collective action, defining the class of eligible FLSA Plaintiffs is useful, as the Court will be asked to order Defendant to produce the names and addresses and other information of potential opt-in Plaintiffs.

62. The class of eligible opt-in Plaintiffs consists of all persons who worked for Defendant as an hourly employee at any time from three (3) years prior to the filing of this case, to entry of judgment in this case (the "FLSA Class" and "Class Period," respectively).

63. Although the precise number of putative class members is unknown, and facts upon which the calculation of that number is based are presently within the sole control of Defendant, upon information and belief, there are over twenty (20) members of the FLSA Class who worked for Defendant within the Class Period.

64. There are questions of law and fact common to this FLSA Class which predominate over any questions solely affecting individual members of the FLSA Class, including whether Defendant failed to compensate employees at any rate for hours employees were required to be at work, performing work and traveling to and from job sites; whether each employee was paid overtime in weeks when they worked over forty (40) hours.

65. Plaintiffs' claims are typical of the claims of the FLSA Class. Plaintiffs will fairly and adequately protect the interests of the FLSA Class.

66. A collective action is superior to other methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

67. Defendant has acted or refused to act on grounds generally applicable to the FLSA Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

68. At all times relevant to this action, Plaintiffs and other FLSA Class Plaintiffs were employed by Defendant within the meaning of the FLSA.

69. At all times relevant to this action, Defendant transacted and transacts commerce and business in excess of $500,000.00 annually or has revenues in excess of $500,000.00 annually, for all applicable periods in question. Further, Plaintiffs were directly involved in interstate commerce and/or indirectly involved in interstate commerce.

70. At all times relevant to this action, Defendant willfully failed to pay all FLSA Class Plaintiffs the overtime premium for hours worked in excess of forty (40) each week and a minimum wage for all hours worked.

71. At all times relevant to this action, due to Defendant's FLSA violations, Plaintiffs and other FLSA Class Plaintiffs are entitled to recover from Defendant their unpaid wages, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §216(b).

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

72. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

73. Defendant willfully employed Plaintiff in the afore-mentioned enterprise and failed to

compensate Plaintiff for all hours worked during his employment.

74. Upon information and belief, Defendant do more than $500,000.00 in business each year and handle goods which have moved in interstate commerce.

75. Defendant failed to compensate the Plaintiff for numerous hours worked each shift when Plaintiffs was required to be at work, ready to work, and actually performing the work and/or paid them less than the minimum wage applicable at the time.

76. Defendant failed to pay the legally mandated overtime premium for all hours worked over forty (40) by Plaintiffs.

77. Defendant took unlawful deductions reducing the wages paid to Plaintiffs below the minimum wage.

78. Defendant's failure to comply with the FLSA caused Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## <u>VIOLATION OF NEW YORK LABOR LAW</u>

79. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

80. Plaintiffs were employees of Defendant within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.; Article 6 & 9 of the NYLL; 12 NYCRR § 142-2.4).

81. Defendant failed to pay Plaintiffs any rate of pay for certain hours when they were required to be at work, ready to work, actually performing work and/or traveling to/from work sites or paid them at a rate that was less than the minimum required at the time they were employed.

82. Defendant failed to pay Plaintiffs the overtime premium for certain hours when Plaintiffs were required to be at work, ready to work, and actually performing the work.

83. Defendant's failure to comply with the New York Labor Law overtime protections

caused Plaintiffs to suffer loss of wages and interest thereon.

84. Defendant's violation was willful.

85. Defendant failed to pay the overtime premium as is required by the New York Labor Law.

86. Defendant failed to pay a spread-of-hours additional payment for all days when they were required to work in excess of ten (10) hours in a day.

87. On account of such violations, Defendant is liable to Plaintiffs for actual, statutory and liquidated damages.

### AS A THIRD CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW

88. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

89. At all times relevant to this action, Plaintiffs were employed by Defendant within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

90. At all times relevant herein, Defendant failed and willfully failed to provide Plaintiffs with an accurate notice(s) required by NYLL 195(1) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

91. At all times relevant herein, Defendant failed and willfully failed to provide Plaintiffs with an accurate statement(s) required by NYLL 195(3) – Plaintiffs are therefore entitled to and seek to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

## JURY DEMAND

92. Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendant:

A. Awarding all wages not paid as required under the FLSA and NYLL, plus any damages under the FLSA and the NYLL and interest;

B. Declaring that Defendant's policies and procedures violate the FLSA and the NYLL;

C. Awarding damages to the Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiffs punitive damages and liquidated damages;

E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Astoria, New York
November 20, 2019

THE ROSE LAW GROUP, PLLC

/s/ Jesse C. Rose
Jesse C. Rose (JR-2409)
3109 Newtown Avenue
Suite 309
Astoria, New York 11102
PH: (718) 989-1864
Fax: (917) 831-4595
Jrose@theroselawgroup.com